**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ERIK C. LOVE, <br><br>                    Plaintiff, <br><br> vs. <br><br> SCOUTLOGIC, INC., <br><br>                    Defendant. | Civil Case No.: 1:26-cv-02993 <br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT

Erik C. Love ("Plaintiff") by and through his counsel brings the following Complaint against ScoutLogic, Inc. ("Defendant") for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, arising out of an employment background check report that Defendant published to Plaintiff's potential employer, which falsely portrayed Plaintiff as a grotesque convicted felon.

## INTRODUCTION

1.      This is an individual action for damages, costs, and attorney's fees brought against Defendant pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA").

2.      Defendant is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis.  It sells consumer reports generated from its database and furnishes these consumer reports to employers who use the reports to make decisions regarding whether to offer employment to certain consumers.

3.      Defendant falsely reported to Plaintiff's prospective employer that Plaintiff was convicted of a felony for "Controlled Substance - Sell, Distribute, or Dispense and Conspiracy to

Distribute Controlled Substance."  Defendant's reporting is grossly inaccurate and untrue.

4.      Plaintiff has never been arrested for, charged with, or convicted of any drug-related offense, and the felony conviction reported by Defendant does not pertain to him in any respect.

5.      The inaccuracy in Defendant's reporting was readily avoidable. A basic review of the publicly available court records from the United States District Court for the Northern District of Mississippi would have confirmed that the felony conviction did not pertain to Plaintiff before Defendant furnished the report to his prospective employer.

6.      Had Defendant conducted even a minimal review of the underlying public court records, it would have readily determined that the criminal record pertains to a different individual, distinguishable from Plaintiff by, among other identifiers, middle name, date of birth, address history, and Social Security Number.

7.      Defendant failed to employ reasonable procedures to assure the maximum possible accuracy of the information it reports about consumers. As a result of this failure, Defendant prepared and furnished a consumer report concerning Plaintiff that was materially inaccurate and falsely attributed to him a serious and stigmatizing felony conviction.

8.      Defendant committed these violations pursuant to its standard policies and practices, which harm innocent consumers seeking employment by prejudicing their prospective employers with inaccurate criminal record information.

9.      As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear,

2

frustration, humiliation, and embarrassment.

10.    As a result of Defendant's conduct, action, and inaction, Plaintiff brings claims against Defendant for failing to follow reasonable procedures to assure maximum possible accuracy based on 15 U.S.C. § 1681e(b) of the FCRA.

## PARTIES

11.    Erik C. Love ("Plaintiff") is a natural person residing in Bronx, New York, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

12.    Defendant ScoutLogic, Inc. ("Defendant" or "ScoutLogic") is an Illinois corporation doing business throughout the United States, including the State of Ohio and in this District, and has a principal place of business located at 7234 West North Avenue, Suite 208, Chicago, Illinois 60707. ScoutLogic can be served through its registered agent, Meyer Law, LTD 330 N. Wabash Ave. Fl. 23 Chicago, IL 60611

13.    Among other things, Defendant sells background checks to employers for their use in deciding whether to offer employment to prospective employees or to take adverse action such as termination, failure to hire, or failure to promote. These reports are provided in connection with a business transaction initiated by the employer.

14.    Defendant is a consumer reporting agency as defined in 15 U.S.C. § 1681a(f) because for monetary fees, it regularly engages in the practice of evaluating and/or assembling information on consumers for the purpose of furnishing consumer reports for employment purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

## JURISDICTION AND VENUE

15.    This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and

15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

16.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## STATUTORY BACKGROUND

17.     Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing.  Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

18.     While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports.  15 U.S.C. § 1681.

19.     Congress, concerned about inaccuracies in consumer reports, specifically required consumer reporting agencies to follow "reasonable procedures to assure maximum possible accuracy" in consumer reports. 15 U.S.C. § 1681e(b).

20.     Consumer reports that contain factually incorrect information which does not belong to the consumer at issue are neither maximally accurate nor fair to the consumers who are the subjects of such reports.

## THE FCRA'S PROTECTIONS FOR JOB APPLICANTS

21.     Despite its name, the Fair Credit Reporting Act covers more than just credit reporting, it also regulates employment background check reports like the one Defendant prepared in Plaintiff's name.

22.    The FCRA provides a number of protections for job applicants who are the subject of background checks for purposes of securing employment, housing, and other purposes.

23.    In the parlance of the FCRA, background checks are "consumer reports," and providers of background checks, like Defendant, are "consumer reporting agencies."  15 U.S.C. §§ 1681a(d) and (f).

24.    The FCRA imposes duties on consumer reporting agencies to assure that consumer reports are accurate and that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

25.    Under 15 U.S.C. § 1681e(b), consumer reporting agencies are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

26.    Defendant disregarded its duties under the FCRA with respect to Plaintiff's background check report.

## DEFENDANT'S ILLEGAL BUSINESS PRACTICES

27.    Over the past 15 years, there has been increased collection and aggregation of consumer data, including criminal records and sex offender registration data. As a result of the increasing availability of this data, there has been a boom in the background check industry.

28.    As summarized in a recent report by the Consumer Financial Protection Bureau[1], a 2018 survey of employers found that 95 percent of employers surveyed conducted one or more types of background screening. CFPB Report at 4.

29.    The criminal background check industry takes in revenues in excess of three billion

---

[1] CFPB, Market Snapshot: Background Screening Reports (Oct. 2019), https://files.consumerfinance.gov/f/documents/201909_cfpb_market-snapshot-background-screening_report.pdf ("CFPB Report").

dollars, annually.

30.    Criminal background checks are generally created by running automated searches through giant databases of aggregated criminal record data. The reports are created and disseminated with little to no manual, in-person review, and the court records are rarely directly reviewed in creating criminal background checks.

31.    Background check companies, like Defendant, collect millions of criminal records from a number of sources with data from county, state, and federal level sources.  The data included on the reports is often not obtained directly from court records on an individual basis but instead is purchased in bulk or scraped from court websites.

32.    Given that Defendant is in the business of selling background checks, Defendant should be well aware of the FCRA and the attendant harm to consumers for reporting inaccurate or outdated information.

33.    Defendant places its business interests above the rights of consumers and reports such inaccurate information because it is cheaper for Defendant to produce reports containing information that is inaccurate and incomplete than it is for Defendant to exert proper quality control over the reports prior to their being provided to Defendant's customers.

34.    Defendant reports such erroneous and incomplete information because it wants to maximize the automation of its report creation process, thereby saving the costs associated with conducting the additional review necessary to remove the inaccurate or out-of-date entries.

35.    Defendant charges its customers the same price for reports that are grossly inaccurate as it does for accurate reports.

36.    Appropriate quality control review of Plaintiff's report would have made clear that Defendant was felony conviction that belong to an unrelated consumer who has a different middle

name and date of birth than Plaintiff.

37.   As a provider of background check reports, Defendant should be aware of the FCRA requirements and is likely a member of the Professional Background Screening Association ("PBSA").  PBSA hosts a conference at least once a year where presenters discuss compliance with federal and state consumer reporting laws.

## FACTS

### Plaintiff Applies for a Job with Security Industry Specialists, Inc. ("SIS")

38.   In or around March 7, 2026, Plaintiff began actively seeking new employment opportunities.

39.   Plaintiff received an offer of employment from SIS for the position of Security Supervisor.

40.   Plaintiff accepted the offer and, in reliance on that offer, informed his then-current employer of his resignation.

41.   On or about March 13, 2026, SIS extended Plaintiff a conditional offer of employment for the position to which he applied, contingent upon his successful completion of a background check (a "consumer report").

### Defendant Published an Inaccurate Background Check Report to SIS

42.   SIS contracted with Defendant to conduct background checks, including criminal history screenings, on its prospective employees.

43.   On or about March 13, 2026, SIS requested that Defendant prepare a criminal background report concerning Plaintiff.

44.   On or about March 13, 2026, and in accordance with its standard procedures, Defendant prepared a consumer report concerning Plaintiff and furnished that report to SIS.

45.    Within that consumer report, Defendant published inaccurate and stigmatizing information about Plaintiff.

46.    Specifically, Defendant's consumer report concerning Plaintiff included a grossly inaccurate and highly stigmatizing felony drug conviction purportedly arising from the United States District Court for the Northern District of Mississippi.

47.    The grotesque criminal conviction reported by Defendant to SIS does not pertain to Plaintiff and was erroneously attributed to him.

48.    Plaintiff has never been arrested for, charged with, or convicted of any drug-related offense.

49.    A cursory review of the publicly available court records confirms that the criminal case pertains to a different individual, Erik Martez Love (the "Convicted Felon Love"), and not to Plaintiff.

50.    Had Defendant consulted the readily available public court records relating to the conviction, it would have observed clear and readily ascertainable discrepancies between Plaintiff and the individual to whom the record actually pertains.

51.    The discrepancies that should have caused Defendant to realize Plaintiff is not the same person as Convicted Felon Love include the following:

(a)    Plaintiff's legal name is "Erik Compton Love" and the criminal record belongs to an "Erik Martez Love," which is both clearly indicated on the face of the consumer report and in the widely available public records;

(b)    Plaintiff's date of birth, which was provided to Defendant prior to publishing the subject consumer report, is November 6, 1986, yet the public court records indicate that Convicted Felon Love's date of birth is June

1986:

(c)     The underlying court records identify an address in Greenwood, Mississippi, which has never been associated with Plaintiff and bears no connection to his residence, address history, or personal identifying information; and,

(d)     Plaintiff's Social Security number, which was provided to Defendant and appears on the face of the subject consumer report, is entirely different from that of the individual identified in the court records, whose Social Security number is reflected as XXX-XX-5069.

52.    The inclusion of the inaccurate criminal record in Plaintiff's consumer report was the direct result of Defendant's failure to follow reasonable procedures to assure the maximum possible accuracy of the information it reported, resulting in the erroneous attribution of another individual's felony conviction to Plaintiff in the report furnished to his prospective employer.

53.    Defendant's conduct reflects the absence of any reasonable matching protocols designed to ensure that criminal records are attributed to the correct individual. Upon information and belief, Defendant failed to require or verify a full name match, disregarded the absence of any middle name correspondence, failed to confirm a complete match of date of birth, ignored plainly inconsistent address history, and failed to reconcile the Social Security Number discrepancy—all of which are fundamental identifiers that would have prevented the misattribution of this criminal record to Plaintiff.

54.    Industry guidance and standard practices require the use of multiple, corroborating identifiers—typically at least two full identifier matches, such as full name and date of birth—before attributing criminal record information to a consumer. Defendant's conduct reflects that it

9

employs no such reasonable matching protocols, as it reported the subject criminal record despite the absence of matching identifiers and the presence of clear and material discrepancies.

55.    This failure is particularly egregious given that Defendant employs no heightened or additional safeguards when reporting on individuals with common names, where the risk of misidentification is well known and demands greater scrutiny to ensure accurate attribution.

56.    Had Defendant employed reasonable procedures, it would have readily determined that the criminal conviction does not pertain to Plaintiff, but instead to an unrelated individual with a different middle name, date of birth, address history, and Social Security Number.

57.    In preparing and selling a consumer report about Plaintiff, wherein Defendant published to Plaintiff's prospective employer inaccurate information about Plaintiff, Defendant failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b).

**Plaintiff Receives a Pre-Adverse Action Notice from SIS**

58.    On or about March 13, 2026, Plaintiff received a pre-adverse action notice from SIS based upon the consumer report prepared by Defendant, which falsely attributed to Plaintiff a serious and derogatory felony drug conviction.

59.    Shortly thereafter, Plaintiff obtained a copy of the subject consumer report and was shocked and deeply distressed to discover that it falsely attributed to him a serious criminal conviction belonging to another individual, namely Erik Martez Love, which Defendant had published to SIS.

60.    Upon discovering the false reporting, Plaintiff experienced significant panic, confusion, and concern regarding the impact that the erroneously attributed felony conviction would have on his employment prospects, reputation, and overall future.

61.     Defendant improperly matched Plaintiff to Erik Martez Love and included that individual's criminal record in the consumer report it prepared about Plaintiff and furnished to SIS. The publicly available court records relating to that conviction—readily accessible to Defendant prior to publication—contained clear exculpatory identifying information demonstrating that the record did not pertain to Plaintiff, yet Defendant failed to conduct even a cursory review of such information before reporting it.

**Plaintiff Disputed the Misinformation in Defendant's Consumer Report**

62.     On March 13, 2026, deeply distressed and concerned about the far-reaching consequences of being falsely identified as a convicted felon, Plaintiff promptly disputed the inaccurate information with Defendant via telephone.

63.     Plaintiff identified himself and provided sufficient information to support his dispute, expressly challenging the inclusion of the criminal record belonging to Erik Martez Love. Plaintiff made clear that the conviction did not pertain to him and specifically requested that Defendant conduct an investigation and remove the inaccurate criminal record from any consumer report concerning him.

64.     On or about March 14, 2026, Defendant emailed Plaintiff confirming receipt of his dispute and the initiation of a reinvestigation. That same day, Defendant further represented that the reinvestigation had been completed, that Plaintiff's report had been revised, and that an updated copy of his consumer report would be sent under separate cover by certified mail to SIS.

65.     After reviewing the revised report and confirming that the inaccurate criminal records had been removed, SIS contacted Plaintiff and advised that it was prepared to proceed with the onboarding process.

66.     As a result of Defendant's publication of the inaccurate criminal information and

11

its failure to employ reasonable procedures, Plaintiff suffered significant emotional distress, including panic, anxiety, confusion, and a profound sense of being shaken, along with ongoing concern for his reputation, his future employment prospects, and fear that such false reporting could recur.

67.     The injuries suffered by Plaintiff as a direct result of Defendant's erroneous reporting are the type of injuries that the FCRA was enacted to address. Under common law, Defendant's conduct would have given rise to causes of action based on defamation and invasion of privacy.

68.     As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

<u>**CLAIMS FOR RELIEF**</u>
**COUNT I**
**15 U.S.C. § 1681e(b)**
**Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy**

69.     Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

70.     Defendant is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

71.     At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

72.     At all times pertinent hereto, the above-mentioned consumer report was a "consumer report" as that term is defined by 15 U.S.C. § 1681a(d).

73.    Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of the consumer report it sold about Plaintiff as well as the information it published within the same.

74.    As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

75.    Defendant willfully violated 15 U.S.C. § 1681e(b) in that its conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

76.    Defendant's violations were willful because they reflect a reckless disregard of its statutory obligations under the FCRA. Despite well-established industry guidance requiring the use of multiple, corroborating identifiers—particularly in the context of criminal record reporting—Defendant failed to implement even the most basic safeguards, such as requiring a full name match or a complete date of birth match before attributing a felony conviction to a consumer. This failure is especially egregious given the known risk of misidentification associated with common names, a risk that is widely recognized and addressed through heightened matching standards within the industry.

77.    Further, upon information and belief, Defendant maintains no procedures requiring review of the underlying public court records to verify that the criminal information being reported actually pertains to the consumer at issue, even where readily available records contain clear,

exculpatory discrepancies. Nor does Defendant employ any formal mechanism to identify common-name scenarios and apply heightened scrutiny or additional matching criteria in such circumstances. Instead, Defendant's practices permit the attribution of severe and stigmatizing criminal records based on incomplete or mismatched identifiers, creating an obvious and unjustifiably high risk of harm to consumers.

78.     Alternatively, Defendant was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

79.     Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that the Court enter a judgment awarding Plaintiff actual damages, statutory damages, punitive damages, and reasonable attorneys' fees and costs, and awarding Plaintiff such other and further relief as the Court may deem appropriate and proper.

## DEMAND FOR JURY TRIAL

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.


Dated: New York,
       April 10, 2026

By:*/s/ Meir Rubinov*
Meir Rubinov, NY Bar # 6077887
CONSUMER ATTORNEYS
68-29 Main Street
Flushing NY 11367
T: 718-640-8123
F: (718) 247-8020
E: mrubinov@consumerattorneys.com

*Attorneys for Plaintiff,*
*Eric C. Love*

14